NOT DESIGNATED FOR PUBLICATION

No. 115,399

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of J.T., A.C., and D.T.,
Minor Children Under the Age of Eighteen.

MEMORANDUM OPINION

Appeal from Brown District Court; JAMES A. PATTON, judge. Opinion filed September 30, 2016.
Affirmed.

*William R. McQuillan*, of Troy, for appellant natural mother.

*Kevin M. Hill*, county attorney, for appellee.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*: Investigating reports of drug activity, Brown County deputies found three children, whose initials are J.T., A.C., and D.T., at the Sunflower Motel in Hiawatha. The minors were living there with their mother. The officers arrested her for possession of oxycodone, methamphetamine, and drug paraphernalia. The motel room was squalid, filthy, and filled with trash. The minors were unbathed and unkempt. The children were placed in the custody of the Department for Children and Families. Mother, who has visited with her children just three times in the 21 months before the court terminated her parental rights, asks us to overturn the court's order terminating her parental rights. This we will not do.

*The children's agency acted quickly.*

When the court placed the children in custody of the Department, KVC Kansas case manager Blair Geiger (then known as Blair Cummings) took over the case. We refer to KVC Kansas as the Center. Geiger met with Mother at the Brown County jail. At this initial meeting, Geiger provided contact information, asked Mother to contact the Center upon her release, and Mother signed releases to allow the Center to meet the medical and educational needs of the children. After the district court found the children to be in immediate danger, it ordered custody of the children to the Department to find temporary placement. In February 2014, the district court found the children to be in need of care and ordered that out-of-home placement continue due to the inability of the parents to care for the children.

Eventually, a seven-point reintegration plan was developed for Mother to:

- obtain and maintain appropriate housing that is safe and stable for family, including keeping all utilities current and providing proof of housing upon request;
- obtain and maintain employment with sufficient income to meet the needs of the family and provide proof of employment upon request;
- participate in an approved parenting class and provide proof of completion;
- schedule and complete a mental health examination and follow all recommendations;
- schedule and complete an assessment from the Regional Alcohol & Drug Assessment Center, and follow all recommendations;
- submit to random UAs; and,
- maintain contact with the Center and update the Center on any changes in contact or residence information.

Mother agreed to this plan at the initial plan conference. It remained unchanged throughout the case. The Center provided Mother with weekly visitation for a minimum of 1 hour, contingent upon her release from incarceration and negative UAs.

Mother was released from jail in January 2014. Mother failed to inform the Center of her release, but Geiger met Mother at the next district court hearing on January 21, 2014. Following her release, Mother visited with her children 1 hour a week, supervised, 3 of the 4 weeks between January 21 and February 12, 2014. Prior to each visit, Mother submitted to UAs and tested negative for all substances. No visit was possible on February 5, 2014, due to inclement weather. However, on February 26, Mother tested positive for opiates and was denied visitation. Mother failed another four UAs, testing positive for opiates each time. Mother's last contact with the children occurred on March 26, 2014.

Concerned about Mother's drug usage, Geiger assisted her with scheduling two appointments with RADAC for February 10 and March 17, 2014, but Mother missed both of these appointments. Mother never provided evidence of completing a RADAC examination. Mother failed to contact the Center from May 2014 to December 2014. In November 2014, the district court discontinued Mother's visitation with the children and directed the Center to change the case plan's objective from reintegration to adoption.

Mother entered Mirrors Drug and Alcohol rehabilitation facility at the end of December 2014. While in Mirrors, Mother talked with Geiger in January 2015 about the case. She left the facility on February 2, 2015. The next day, Mother moved to Peru, Indiana to be with her mother.

*With nothing accomplished by Mother, the State seeks termination of her parental rights.*

In May 2015, the State moved for the termination of Mother's parental rights. At the hearing, Geiger testified about the Center's efforts to reintegrate the children with Mother and about Mother's lack of progress on the permanency plan tasks. Geiger told the court that Mother missed numerous plan conferences. The Center lost contact with Mother for 8 months. She testified that Mother never provided the Center with evidence of permanent and adequate housing, and, at times, Mother reported she was homeless. She also indicated that Mother never provided the Center with proof of employment to meet the needs of the family.

Geiger further reported that Mother never completed a parenting class, mental health assessment, or RADAC assessment. She described the visitation procedure and told the district court that Mother had 80 opportunities to visit the children but only visited the children three times. In part, Mother's limited visitations were due to five failed UAs in a row, testing positive for opiates each time. The Center maintained the same phone number and address throughout the pendency of the case. Finally, Geiger explained that parent-child contact is extremely important and such limited contact was not healthy and "very poor."

Mother testified that she was homeless at various times after the initial referral and agreed with the State that administrators of the Interstate Compact on the Placement of Children placed a "substantiation" on her home in Indiana, which prevented placement of the children in Mother's home. Mother further testified she was unemployed. She explained that her drug addiction prevented her compliance with the plan tasks. On cross-examination, Mother agreed she had not completed a Center-approved parenting class or a mental health appointment. Mother testified that she never sent the children cards celebrating birthdays or holidays.

The district court concluded that Mother was an unfit parent by reason of her conduct and lack of contact, and that such unfit circumstances were not likely to change in the foreseeable future. The district court believed the physical, mental, and emotional health of the children would best be served by terminating Mother's parental rights and placing the children in the State's custody to pursue adoption.

*We see ample evidence in the record that supports the district court.*

When this court reviews a district court's termination of parental rights, it considers whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's rights should be terminated. Appellate courts do not weigh conflicting evidence, determine the credibility of witnesses, or redetermine factual questions. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

After a district court has adjudicated a child to be in need of care, the court may terminate parental rights when it finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future. K.S.A. 2015 Supp. 38-2269(a). When deciding whether a parent is unfit, the district court must consider a nonexclusive list of factors in K.S.A. 2015 Supp. 38-2269(b). When the child is not in the parent's custody, as in this case, the district court must also consider four additional factors listed in K.S.A. 2015 Supp. 38-2269(c). The proof of any one factor may, by itself, establish grounds for termination of parental rights. K.S.A. 2015 Supp. 38-2269(f); *In re L.S.M.A*, No. 114,038, 2016 WL 1391809, at *5 (Kan. App. 2016) (unpublished opinion), *rev. denied* 304 Kan. ___ (2016).

Mother's sole issue on appeal is the sufficiency of the evidence for the district court's finding of unfitness. After examining the record, we conclude the evidence sufficiently supported the district court's conclusion that Mother was an unfit parent. On review, this court is limited to examining the evidence admitted at the termination hearing. *In re Ky.H.*, No. 114,508, 2016 WL 1079500, at *5 (Kan. App. 2016) (unpublished opinion). At the termination hearing, Geiger testified for the State. Mother testified on her own behalf but offered no additional exhibits or documents.

The district court, without reference to specific statutory citations but using the statutory language, terminated Mother's parental rights based on the presence of the following statutory factors:

- K.S.A. 2015 Supp. 38-2269(b)(4)—physical, mental, or emotional abuse or neglect of the children;
- K.S.A. 2015 Supp. 38-2269(b)(7)—failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;
- K.S.A. 2015 Supp. 38-2269(b)(8)—lack of effort on the part of the parent to adjust to the parent's circumstances, conduct, or conditions to meet the needs of the children;
- K.S.A. 2015 Supp. 38-2269(c)(2)—failure to maintain regular visitation, contact, or communication with the children or with the custodian of the children; and,
- K.S.A. 2015 Supp. 38-2269(c)(3)—failure to carry out a reasonable plan approved by the court directed toward the integration of the children into a parental home.

We look first at the evidence of neglect. Geiger confirmed that Brown County deputies found the children in an unsafe environment, surrounded by drugs, drug paraphernalia, and garbage. Mother testified that she struggled with drugs and

6

homelessness for over a year after the children were taken into custody. Geiger testified that after a few initial visits, Mother went 8 months without attempting to visit the children or contact the Center to check on the children's status. Mother also testified that she never sent cards to commemorate holidays or birthdays. Without explanation, Mother in effect abandoned her children for those 8 months. The State's evidence was uncontested, and Mother's testimony agreed with the facts as presented by the State.

Next, we look at the lack of rehabilitation. The district court found the State's efforts to rehabilitate Mother were reasonable. As Geiger explained, Mother's permanency plan tasks included finding stable housing and sufficient income to tend to the children's needs and required close contact with the Center. Geiger testified that she arranged two appointments for Mother with RADAC, which Mother missed without explanation. While Mother made progress on the tasks initially, within 3 months of the initial reference, Mother stopped almost all progress. Five months after the initial reference, Mother ceased contact and visitation with the Center for approximately 8 months. Despite the Center's best efforts, Mother's inability to progress towards reintegration prevented the Center from rehabilitating the family. Therefore, as Mother substantially agreed with Geiger's testimony, the court had clear and convincing evidence for this factor.

We next look at Mother's efforts. She contends she changed her circumstances to meet the needs of the children. Mother argues her addiction and homelessness caused her failure to progress. Mother testified that she resolved these issues by completing a drug treatment program, moving into her mother's home, and searching for employment. Mother further testified that she remained sober after her drug treatment. However, Mother never provided proof to the court beyond her own statements. Furthermore, the home she moved into was inappropriate for children due to a block from ICPC.

Mother made some effort, but at the time her parental rights were terminated, she was still unable to provide for the children. However, resolving her drug addiction is only one condition. Mother was still unemployed and without an adequate home. She never completed the mental health assessment or the parenting class. Thus, the court could rationally find, viewing this evidence in the light most favorable to the State, that Mother lacked effort to change her circumstances.

When we look at visitation evidence, we note that the district court took particular umbrage with Mother's minimal visitation and contact with the children. Mother visited her children 3 of a potential 80 times. Mother never commemorated the children's birthdays or holidays and, as noted above, abandoned her children for 8 months when she fell out of contact with the Center. As the district court noted, Mother moved from Kansas, which made contact with the children more difficult. Mother offered little explanation and generally agreed with the State's evidence on this factor. Furthermore, Mother agreed that her visitation history was unacceptable.

Finally, we look at the reintegration plan. Mother failed to adequately complete any permanency plan task. Twenty-one months after the State took custody of the children, Mother failed to prove her ability to complete any tasks in the foreseeable future.

Viewing the evidence presented at the termination hearing, in the light most favorable to the State, Mother failed in her responsibilities under the permanency plan and in her duties as a parent. The other factors that the district court relied on were supported by clear and convincing evidence, and those factors were more than enough to support the termination of Mother's parental rights.

Affirmed.

8